UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| United States ex rel. | ) | |
| REBEKAH LONGACRE, | ) | |
| Relator, | ) | |
| | ) | |
| BRINGING THIS ACTION ON | ) | |
| BEHALF OF THE UNITED STATES | ) | CASE NO. 1:16-cv-_____ |
| OF AMERICA | ) | |
| | ) | **PLAINTIFF'S COMPLAINT** |
| | ) | **JURY TRIAL REQUESTED** |
| vs. | ) | **INJUNCTIVE RELIEF REQUESTED** |
| | ) | |
| | ) | FILED IN CAMERA SEALED PURSUANT |
| AB HOME HEALTH CARE, LLC, | ) | TO 31 U.S.C.A. § 3730(b)(2) |
| | ) | |
| Defendant. | ) | |

## <u>INTRODUCTION</u>

1.     This is an action by *Qui Tam* Relator Rebekah Longacre ("Relator Longacre"), in the name of the United States government, for a trial by jury to recover treble damages, penalties, attorney's fees and costs, and damages pursuant to the *Qui Tam* provisions of the False Claims Act, as amended, 31 U.S.C.A. §§ 3729, *et seq.*

2.     Relator Longacre's allegations relate to the submission of false and/or fraudulent claims by Defendant AB Home Health Care, LLC ("Defendant AB Home Health") for payments to federally funded MaineCare programs.

3.     Defendant AB Home Health, in performance of its contracts with the State of Maine, were to provide services, *inter alia*, by persons who were certified and/or qualified pursuant to MaineCare Benefits Manual, ch. 11, § 19 and § 96 (all references and citations to the MaineCare Benefits Manual in this Complaint are to the versions of the regulations in effect at the time of the Plaintiff's employment, i.e. ch. 11, § 19 as updated effective December 15, 2014

and   ch. 11, § 96 as updated on June 27, 2010. Both regulations have been updated since Plaintiff's separation from Defendant AB Home Health and while the updates did not make substantive changes to the relevant portions of the regulations they did, in some cases, change the citations.)

4.      Qualifications of Defendant AB Home Health's employees was a precondition for submitting invoices to, and receiving payments from, the State of Maine.

5.      Defendant AB Home Health's knowing failure to comply with preconditions for payment resulted in payments being provided to it in violation of MaineCare regulations and 31 U.S.C.A. § 3729.

## **PARTIES**

6.      Relator Longacre is a natural person residing in the City of Auburn, Androscoggin County, State of Maine and is a citizen of the United States of America.

7.      Relator Longacre was an employee of Defendant AB Home Health from January 21, 2014 until June 2, 2015.

8.      Relator Longacre brings this civil action for violations of 31 U.S.C.A. § 3729(a)(1)-(2), for herself and for the United State Government and State of Maine pursuant to 31 U.S.C.A. § 3730(b)(1).

9.      Upon information and belief, Defendant AB Home Health is a limited liability corporation organized under the laws of the State of Maine.

10.      Upon information and belief, Defendant AB Home Health's principal place of business is in the City of Portland, Cumberland County, State of Maine.

11.     Upon information and belief, the 2015 Annual Report for Defendant filed with the Maine Department of the Secretary of State, Bureau of Corporations, Elections, and Commissions indicates (expressly and/or implicitly), *inter alia*, the following:

    a.     that Defendant's owner is Abdulfatah Ali;

    b.     it provides culturally competent home healthcare services in the State of Maine; and,

    c.     it hires PSSs, CNA/HHAs, LPNs, RNs, therapists, and social workers.

## JURISDICTION & VENUE

12.     This action arises under the False Claims Act, 31 U.S.C.A. § 3729, *et seq.*

13.     Jurisdiction is conferred upon this Court pursuant to 31 U.S.C.A. § 3732(a) and 28 U.S.C.A. § 3130 since this action arises under the laws of the United States of America. Relator Longacre requests a jury on all issues for which a jury trial is permitted.

14.     Venue is proper in the United States District Court for the District of Maine, Portland Division, because:

    a.     Defendant AB Home Health's principal place of business is in the City of Portland, Cumberland County, State of Maine; and,

    b.     many of the facts that form the basis for this Complaint occurred within this District.

## FACTS

15.     MaineCare is healthcare coverage for eligible individuals and families.

16.     MaineCare is funded by State and Federal dollars.

17.     MaineCare is the program which provides eligible persons in Maine with services under the Federal Medicaid program.

18.     The Maine Department of Health and Human Services ("Maine HHS") is responsible for administering MaineCare in compliance with State and Federal statutes and administrative policies.

19.     The federal Center for Medicaid and Medicare Services ("CMS") oversees and audits Maine HHS' administration of the MaineCare program.

20.     Defendant AB Home Health represents itself as a premier agency for providing culturally competent home healthcare in the State of Maine and Massachusetts.

21.     Defendant AB Home Health also represents that it is committed to providing high quality, culturally competent, client-centered and affordable home health care services to its clients to assist them to lead dignified and independent lives in the comfort and safety of their own homes.

22.     Defendant AB Home Health is licensed by Maine HHS to provide certain MaineCare services.

23.     In conjunction with its license described in Paragraph 22, *supra.*, Defendant AB Home Health provides nursing and/or therapy services.

24.     Further, in connection with its license described above, Defendant AB Home Health:

a.      performs services for eligible MaineCare members; and,

b.      submits claims and receives payment for services to those individuals eligible for MaineCare.

25.     As a provider of services to be reimbursed under MaineCare, Defendant AB Home Health as a condition of its participation in this government health care program and as a precondition for payment through this program is responsible for compliance with all legal and

proper billing and reimbursement rules/regulations required by said government health care program.

26.    The requirements expressed/implied in Paragraph 25, *supra.*, are stated expressly and/or implicitly throughout the various rules, regulations, claim forms, conditions of participation, and other participation documents.

27.    As a Maine HHS licensed provider, Defendant AB Home Health bills for its services pursuant to the following:

      a.    MaineCare Benefits Manual, ch. 11, § 19 ("Section 19"); and,

      b.    MaineCare Benefits Manual, ch. 11, § 96 ("Section 96").

28.    The services associated with those covered in Section 19 are related to home and community benefits for the elderly and for adults with disabilities.

29.    More specifically, the services described in Paragraph 28, *supra.*, are in-home care and other services, designed as a package, to assist eligible individuals to remain in their homes, or other residential community settings, to avoid or delay institutional nursing facility care.

30.    The services described above must be provided by a home health aide, certified nursing assistant, or personal support specialist ("PSS"), as defined in the MaineCare Benefits Manual, ch. II, §19.01-37.

31.    More specifically, a PPS is, *inter alia*, the following:

      a.    also known as a personal care assistant;

      b.    provides personal care services, as defined in the MaineCare Benefits Manual, ch. II, § 19.01-36;

      c.    has completed a Maine HHS approved training course of at least fifty (50) hours (unless otherwise exempt);

d.      has received training in basic personal support procedures;

e.      has received training in first aid;

f.      has received training in the handling of emergencies;

g.      has received training in the review of mandatory reporting requirements under the Adult Protective Act; and/or,

h.      other things that might be identified during the course of discovery and/or proven at trial.

32.     In addition to the requirements for a PSS indicated above, a PSS must meet certain training and examination requirements.

33.     To meet the training and examination requirements described in Paragraphs 31 and 32, *supra.*, a PSS must enroll in a certified training program within sixty (60) days of hire and complete training and examination requirements within nine (9) months of employment and meet all other requirements or else the services by said PSS must stop until such time as the training and examination requirements are met.

34.     MaineCare Benefits Manual, ch. II, § 19.08-4(B)(4)(d) & (e) prohibits provider agencies from seeking reimbursement for PSS services provided by persons who do not meet the qualification requirements of the Regulation.

35.     The services associated with those covered in Section 96 are related to private duty nursing and personal care services.

36.     More specifically, the services described in Paragraphs 34 and 35, *supra.*, are those covered services provided to an eligible individual, when determined to be medically necessary, when prior approved and in the best interest of the individual according to the orders and written plan of care reviewed and signed by a licensed physician.

37.     One of the services that are covered in Section 96 are personal care services, as defined in the MaineCare Benefits Manual, ch. II, § 96.01-4.

38.     Further, the personal care services described in Paragraph 37, *supra*, must be provided by a home health aide, certified nursing assistant, personal support specialist (PSS), or certified residential medication aide.

39.     For a provider to receive reimbursement from MaineCare for the services provided in Section 96, it must have qualified staff provide said services pursuant to, *inter alia*, MaineCare Benefits Manual, ch. II, § 96.07-5.

40.     For a provider to be reimbursed by MaineCare for services provided by a PSS, the PSS must meet certain requirements.

41.     Some of the requirements referred to in Paragraph 40, *supra,* are the following:

    a.     a criminal background check, pursuant to MaineCare Benefits Manual, ch. II, § 96.07-5(G)(1);

    b.     a CNA registry check, pursuant to MaineCare Benefits Manual, ch. II, § 96.07-5(G)(1);

    c.     that the PSS meets certain training and examination requirements and if said requirements were not met, must enroll in a certified training program within sixty (60) days of hire and complete said certified training program with nine (9) months of hire, pursuant to MaineCare Benefits Manual, ch. II, § 96.07-5(G)(2);

    d.     a new employee orientation, pursuant to MaineCare Benefits Manual, ch. II, § 96.07-5(G)(3); and,

    e.     be able to assure that the regulatory mandates were being met and maintain documentation demonstrating that a PSS was qualified, pursuant to MaineCare Benefits Manual, ch. II, § 96.07-5(G)(4).

42.     The training and examination requirements referred to in Paragraph 41, *supra*, encompass some of the following:

  a.  hold a valid certificate of training for nursing assistants or have official documentation of equivalent training as verified by the office of the Maine CNA Registry, and be currently listed on the Maine CNA Registry without any annotation that would prohibit that individual from employment; or,

  b.  hold a valid certificate of training, issued within the past three years, for nurse's aide or home health aide training which meets the standards of the Maine State Board of Nursing- nursing assistant training program; or,

  c.  pass the competency-based examination of didactic and demonstrated skills from the Maine HHS's approved personal support specialist curriculum if a CNA whose status on the Maine Registry of Certified Nursing Assistants has lapsed, or an individual who holds a valid certificate of training issued more than three years ago, for nurse's aide or home health aide training which meets the standards of the Maine State Board of Nursing- nursing assistant training program; or

  d.  hold a valid certificate of training as a personal support specialist/personal care assistant issued as a result of completing the Maine HHS-approved personal support specialist training curriculum and passing the competency-base examination of didactic and demonstrated skills. The training course must include at least 50 hours of formal classroom instruction, demonstration, return demonstration, and examination;

  e.  be a personal support specialist (PSS) who successfully completed a Maine HHS-approved curriculum prior to September 1, 2003. Such individuals will be grand fathered as a qualified personal care assistant/PSS; or

  f.  obtain a waiver from the Maine HHS or a designated agency.

43.  MaineCare Benefits Manual, ch. II, § 96.07 prohibits provider agencies from seeking reimbursement for PSS services provided by persons who do not meet the qualification requirements of the Regulation.

44.  Upon information and belief, Defendant AB Home Health utilized the same employees to provide PSS services associated with Sections 19 and 96.

45.  On or about January 21, 2014, Relator Longacre was hired to work for Defendant AB Home Health.

46. Prior to being hired to work for AB Home Health, Relator Longacre had worked in other health care settings in the professional field of nursing.

47. Some of the work that Relator Longacre performed as described in Paragraph 46, *supra*, involved understanding and ensuring compliance with the laws, rules, and/or regulations associated with MaineCare/Medicaid.

48. When Relator Longacre was hired, as indicated above, her job was that of a nurse supervisor.

49. Once Relator Longacre was hired to work for Defendant AB Home Health, she was made aware by Mr. Ali that a PSS working for Defendant AB Home Health would not receive a paycheck if their respective services had not been reimbursed by MaineCare.

50. Within a very short amount of time of being hired by Defendant AB Home Health, Relator Longacre became concerned that some of the employees who were working for Defendant AB Home Health were not qualified for purposes of the regulations.

51. Relator Longacre's concern indicated in Paragraph 50, *supra*, was based upon the fact that:

    a.    PSSs were required to have specified training (as previously described herein); and,

    b.    if said training had not been achieved, then Defendant AB Home Health could not seek reimbursement from MaineCare for that particular employee's services rendered.

52. Further, Relator Longacre was of the belief that there were PSSs working for Defendant AB Home Health who had not obtained the required training even though they had worked for Defendant Home Health for more than nine (9) months.

53.     Additionally, Relator Longacre was aware, based on her personal observations, that the unqualified PSSs working for Defendant AB Home Health were receiving their paychecks.

54.     Relator Longacre notified Defendant AB Home Health's agent about her concerns described above.

55.     On or about October 27, 2014, Relator Longacre notified Mr. Ali that she was of the opinion that an employee of Defendant AB Home Health was performing actions/omissions that likely were MaineCare fraud.

56.     On about March 3, 2015, Relator Longacre received a promotion to the position of director of nursing ("DON") within Defendant AB Home Health.

57.     Relator Longacre met the job requirements for the DON position, including but not limited to the following:

   a.     knowledge of Medicare and Medicaid regulations;

   b.     licensed as a Registered Nurse in Maine; and,

   c.     other things that might be identified during the course of discovery and/or proven at trial.

58.     As the DON, Relator Longacre had a variety of job duties, including among others the following:

   a.     assisting in the formation of a business plan for Defendant AB Home Health including things such as strategic goals and a yearly budget;

   b.     coordinating a variety of continuing education for Defendant AB Home Health's staff; and/or,

   c.     other things that might be identified during the course of discovery and/or proven at trial.

59.     As the DON for Defendant AB Home Health, Relator Longacre asked Mr. Ali on more than one occasion for access to Defendant AB Home Health's financial records.

60.     Relator Longacre's requests described in Paragraph 59, *supra*, were always denied.

61.     Relator Longacre believed that there were PSSs working for Defendant for more than nine (9) months without the training mandated by the governing regulations.

62.     Relator Longacre believed that the individuals described in Paragraph 61, *supra*, were completing time sheets for Defendant AB Home Health which were then being submitted for reimbursement from MaineCare.

63.     Relator Longacre expressed concerns to Mr. Ali that she believed Defendant AB Home Health should not be billing for services being rendered by employees who were not qualified pursuant to the regulations.

64.     Relator Longacre also believed, based on her interactions with Defendant AB Home Health's PSS employees, that many could not read the English language at an eighth (8th) grade level.

65.     In response to Relator Longacre's repeated concerns described in Paragraph 64, *supra*, Mr. Ali would merely tell Relator Longacre that it would be taken care of and/or to not worry.

66.     Relator Longacre continued to express her concerns to Mr. Ali that there were many employees working for Defendant AB Home Health who needed to attain their required training or should be fired.

67.     Mr. Ali did not terminate employees in response to Relator Longacre's expressed concerns in Paragraph 66, *supra*. Rather, these employees continued to be employed, scheduled for PSS shifts, and paid for their work.

68.     On or about March 31, 2015, Relator Longacre notified (via email) Mr. Ali that she was of the opinion that an employee of Defendant AB Home Health had committed fraud and should be terminated.

69.     On or about May 15, 2015 Relator Longacre had a phone call with Mr. Ali.

70.     During the phone call described in Paragraph 69, *supra*, Relator Longacre put Defendant AB Home Health on notice (again) of her concerns about the fact that there were many PSS employees working for Defendant AB Home Health who did not have the required training pursuant to the regulations previously described herein.

71.     During the phone call described in Paragraph 69, *supra*, Relator Longacre put Defendant AB Home Health on notice (again) of the fact that she wanted MaineCare to come and perform an audit of Defendant AB Home Health to ensure that they were in compliance with the mandated regulations and preconditions for reimbursement with MaineCare/Medicaid funds.

72.     It was Relator Longacre's belief that Mr. Ali did not agree with her recommendations and discounted her concerns about whether Defendant AB Home Health was in compliance with the mandated regulations.

73.     After the phone call described above, Relator Longacre sent Mr. Ali an email correspondence memorializing some of the issues discussed during the phone call described above.

74.     One of the issues identified in Relator Longacre's email correspondence described in Paragraph 73, *supra*, was the fact that Mr. Ali wanted Relator Longacre to study the

regulations associated with the Maine HHS prior to Relator Longacre making a request for an audit from Maine HHS.

75.    On or about June 2, 2015, Relator Longacre sent an email correspondence to Mr. Ali.

76.    In the email correspondence described in Paragraph 75, *supra*, Relator Longacre indicated (expressly and/or implicitly), *inter alia*, that she:

    a.    would be calling Mr. Ali to establish a meeting so that she could go over the regulations she believed Defendant AB Home Health had violated; and,

    b.    she had called the Maine HHS because she wanted to ensure that Defendant AB Home Health was in compliance with the applicable regulations.

77.    When Relator Longacre's efforts to curtail what she believed to be were violations of the law were unsuccessful and/or discounted by Defendant AB Home Health, Relator Longacre made the decision to contact the Maine HHS, Division of Licensing and Regulatory Services.

78.    Relator Longacre made her phone call to Mr. Ali described above because she wanted to have the Maine HHS perform an audit of Defendant AB Home Health.

79.    After Relator Longacre made her phone call described above, Mr. Ali told her to leave Defendant AB Home Health.

80.    Once Relator Longacre was forced to leave Defendant AB Home Health, as indicated above, she contacted the Maine HHS Division of Licensing and Regulatory Services ("Maine LRS") because of her previously unaddressed concerns which she had shared with Defendant AB Home Health.

81. More specifically, when Relator Longacre contacted the Maine LRS, as indicated above, she did so to make various complaints pertaining to Defendant AB Home Health.

82. The complaints that were made by Relator Longacre to the Maine LRS were given the following identification:

      a. ME19137, which was Relator Longacre's complaint relating to unqualified personnel working for Defendant AB Home Health;

      b. ME19138, which was Relator Longacre's complaint relating to unqualified personnel working for Defendant AB Home Health; and,

      c. ME16058, which was Relator Longacre's complaint relating to unqualified staff working for Defendant AB Home Health.

83. On or about July 13, 2015, the Maine LRS performed an investigation into the allegations relating to Relator Longacre's complaint that had been made, as indicated herein.

84. On or about July 27, 2015, the Maine LRS issued correspondence to Defendant AB Home Health wherein it indicated, *inter alia*, that the complaints enumerated in Paragraphs 82, *supra,* were substantiated.

85. More specifically, some of the substantiated deficiencies that the Maine LRS identified during its investigation described above were, *inter alia*, the following:

      a. Defendant AB Home Health failed to conduct criminal background checks prior to hiring some of its employees, in violation of the MaineCare Benefits Manual;

      b. Defendant AB Home Health failed to check the Certified Nurse's Aide Registry prior to hiring some of its employees, in violation of the MaineCare Benefits Manual;

      c. Defendant AB Home Health failed to maintain copies of current licenses of licensed health professionals it employed directly or indirectly, in violation of the MaineCare Benefits Manual;

      d. Defendant AB Home Health was unable to demonstrate whether its Director of Nursing and/or staff nurses met the minimum requirements for

their respective positions, as required under the MaineCare Benefits Manual; and

e.  other things that might be identified during the course of discovery and/or proven at trial.

86.  During January 2014, Defendant AB Home Health:

a.  submitted charges to MaineCare in the amount of $169,792.03; and,

b.  received a net pay from MaineCare in the amount of $153,261.74.

87.  During February 2014, Defendant AB Home Health:

a.  submitted charges to MaineCare in the amount of $151,982.38; and,

b.  received a net pay from MaineCare in the amount of $130,850.40.

88.  During March 2014, Defendant AB Home Health:

a.  submitted charges to MaineCare in the amount of $118,724.45; and,

b.  received a net pay from MaineCare in the amount of $114,213.46.

89.  During April 2014, Defendant AB Home Health:

a.  submitted charges to MaineCare in the amount of $128,842.03; and,

b.  received a net pay from MaineCare in the amount of $120,247.92.

90.  During May 2014, Defendant AB Home Health:

a.  submitted charges to MaineCare in the amount of $191,892.14; and,

b.  received a net pay from MaineCare in the amount of $166,304.75.

91.  During June 2014, Defendant AB Home Health:

a.  submitted charges to MaineCare in the amount of $204,987.18; and,

b.  received a net pay from MaineCare in the amount of $167,354.52.

92.  During July 2014, Defendant AB Home Health:

a.  submitted charges to MaineCare in the amount of $146,870.50; and,

      b.      received a net pay from MaineCare in the amount of $133,152.93.

93.     During August 2014, Defendant AB Home Health:

      a.      submitted charges to MaineCare in the amount of $170,742.84; and,

      b.      received a net pay from MaineCare in the amount of $162,048.41.

94.     During September 2014, Defendant AB Home Health:

      a.      submitted charges to MaineCare in the amount of $155,080.46; and,

      b.      received a net pay from MaineCare in the amount of $133,149.61.

95.     During October 2014, Defendant AB Home Health:

      a.      submitted charges to MaineCare in the amount of $141,220.82; and,

      b.      received a net pay from MaineCare in the amount of $118,742.85.

96.     During November 2014, Defendant AB Home Health:

      a.      submitted charges to MaineCare in the amount of $169,751.21; and,

      b.      received a net pay from MaineCare in the amount of $154,067.81

97.     During December 2014, Defendant AB Home Health:

      a.      submitted charges to MaineCare in the amount of $93,912.84; and,

      b.      received a net pay from MaineCare in the amount of $91,820.53.

98.     During January 2015, Defendant AB Home Health:

      a.      submitted charges to MaineCare in the amount of $128,465.66; and,

      b.      received a net pay from MaineCare in the amount of $119,205.23.

99.     During February 2015, Defendant AB Home Health:

      a.      submitted charges to MaineCare in the amount of $101,608.02; and,

      b.      received a net pay from MaineCare in the amount of $97,341.97.

100.    During March 2015, Defendant AB Home Health:

     a.     submitted charges to MaineCare in the amount of $126,853.57; and,

     b.     received a net pay from MaineCare in the amount of $124,393.70.

101.    During April 2015, Defendant AB Home Health:

     a.     submitted charges to MaineCare in the amount of $122,547.70; and,

     b.     received a net pay from MaineCare in the amount of $110,470.63.

102.    During May 2015, Defendant AB Home Health:

     a.     submitted charges to MaineCare in the amount of $161,634.45; and,

     b.     received a net pay from MaineCare in the amount of $148,041.70.

103.    During June 2015, Defendant AB Home Health:

     a.     submitted charges to MaineCare in the amount of $117,795.22; and,

     b.     received a net pay from MaineCare in the amount of $100,415.78.

104.    During all of the time periods enumerated in Paragraphs 86 through 103, *supra*, the MaineCare reimbursement rate for personal support services and personal care services provided by a qualified PSS pursuant to Sec. 19 and Sec. 96 was $15.00 per hour.

105.    During all of the time periods enumerated in Paragraphs 86 through 103, *supra*, Relator Longacre personally observed employees of Defendant AB Home Health that were unqualified for purposes of the MaineCare regulations scheduled for shifts and working from 16 to 120  hours per month providing purported personal support services and purported personal care services for purposes of Sec. 19 and Sec. 96.

106.    During all of the time periods enumerated in Paragraphs 86 through 103, *supra*, Relator Longacre personally observed PSS employees receive paychecks even though said employees were not qualified pursuant to the regulations previously described herein.

107.    By way of example, Relator Longacre personally observed eight employees with initials ST, NY, MI, SH, AN, LL, SH and FM provide purported personal support services and purported personal care services for purposes of Sec. 19 and Sec. 96 even though these employees were not qualified pursuant to the regulations previously described herein.

108.    Reimbursement provided from MaineCare to Defendant AB Home Health as enumerated in Paragraphs 86 through 103, *supra,* included reimbursement at a rate of $15.00 per hour for 16 to 120 hours per month for personal support services and personal care services purportedly provided by the eight employees of Defendant AB Home Health referenced above who were not qualified to provide the services in question for purposes of the MaineCare regulations.

109.    More specifically, one of the primary reasons why Relator Longacre believed that the employees described in Paragraph 107, *supra*, were not qualified was because said employees did not receive training as required by the regulations as previously described herein.

110.    Another reason that Relator Longacre believed that Defendant AB Home Health was billing MaineCare for services provided by unqualified personnel was that the employees in question were receiving paychecks and Mr. Ali had stated to Relator Longacre that employees were only paid after Defendant AB Home Health received reimbursement from MaineCare for the services in question.

111.    Upon information and belief, Defendant AB Home Health submitted charges to the Maine HHS, to be paid via MaineCare, for services provided by staff members that were not qualified.

112.    Upon information and belief, having qualified staff members provide services that were billed to MaineCare was a precondition for receiving monies from MaineCare.

18

113.    Defendant AB Home Health, by and though its authorized agents, permitted invoices to be submitted to Maine HHS for purposes of receiving reimbursement for services it performed as part of its MaineCare contract(s).

114.    Defendant AB Home Health, did receive reimbursement from MaineCare including reimbursement for purported PSS services performed by persons who did not meet the regulations' required qualifications.

115.    Defendant AB Home Health submitted invoices to Maine HHS and received MaineCare/Medicaid reimbursement for services when the MaineCare regulations expressly forbid Defendant AB Home Health from receiving reimbursement for the services in question

116.    Relator Longacre made repeated efforts to curtail and/or stop Defendant AB Home Health from submitting claims to MaineCare that were false and/or that should not be reimbursed.

117.    As a result of its actions and/or omissions, Defendant AB Home Health has caused the State of Maine and/or the United States government (including, without limitations, its respective taxpayers) to suffer significant monetary damages.

## CAUSES OF ACTION

### COUNT I: FALSE CLAIMS ACT VIOLATIONS
### (PRESENTATION OF FALSE CLAIMS)
### 31 U.S.C.A. § 3729(1)(A), ET SEQ.

118.    Relator Longacre repeats and realleges each and every factual allegation set forth in Paragraphs 1 through 117, *supra,* with the same force and effect as if fully set forth verbatim herein.

119.    Defendant AB Home Health provided services that were paid by MaineCare.

120.    Defendant AB Home Health had a variety of regulatory mandates that it needed to comply with in order to be paid by MaineCare for services rendered.

121.    Defendant AB Home Health submitted bills/invoices to MaineCare for services it rendered for the purpose of being reimbursed for said services.

122.    Many of the bills/invoices that Defendant AB Home Health submitted to MaineCare were for services that were provided by employees who were not qualified.

123.    Defendant AB Home Health's submission of invoices/bills to MaineCare was done with the express and/or implied representation(s) that it had in fact met all required regulatory preconditions for seeking reimbursement from MaineCare.

124.    The services that were performed by Defendant AB Home Health's unqualified employees were not eligible for reimbursement by MaineCare.

125.    Defendant AB Home Health, when it submitted its bills/invoices described herein, had actual knowledge and/or acted with deliberate ignorance and/or acted with reckless disregard to the truth and/or falsity of the claims it was submitting to MaineCare.

126.    Defendant AB Home Health's invoices/bills sent to MaineCare had the natural tendency to influence, or was capable of influencing, a decision by MaineCare as to the issuance of reimbursement for services rendered.

127.    MaineCare did in fact, as previously described herein, reimburse Defendant AB Home Health for the services associated with the invoices/bills it received.

128.    Defendant AB Home Health, by and through its officers, agents, supervisors, and/or employees, authorized the acts previously described herein.

129.    The State of Maine and the Federal government have been damaged as a result of Defendant AB Home Health's actions and/or omissions previously described herein, since they

have paid money for services that did not comply with the mandated regulations and preconditions for payment.

130.    By virtue of the foregoing, Defendant AB Home Health is liable in an amount to be determined, plus punitive damages, interest and costs, treble damages, reasonable attorneys' fees to the fullest extent permissible, and such other and further relief as this Court deems just and appropriate.

## COUNT II: FALSE CLAIMS ACT VIOLATIONS
## (FALSE RECORDS/STATEMENTS)
## 31 U.S.C.A. § 3729(1)(B), ET SEQ.

131.    Relator Longacre repeats and realleges each and every factual allegation set forth in Paragraphs 1 through 130, *supra,* with the same force and effect as if fully set forth verbatim herein.

132.    Defendant AB Home Health provided services that were to be paid by MaineCare.

133.    Defendant AB Home Health had a variety of regulatory mandates that it needed to comply with in order to be paid by MaineCare for services rendered.

134.    Defendant AB Home Health submitted bills/invoices to MaineCare for services it rendered for the purpose of being reimbursed for said services.

135.    Many of the bills/invoices that Defendant AB Home Health submitted to MaineCare were for services that were provided by employees who were not qualified.

136.    Defendant AB Home Health's submission of invoices/bills to MaineCare was done with the express and/or implied representation(s) that it had in fact met all of the required regulatory preconditions for seeking reimbursement from MaineCare.

137.    The services that were performed by Defendant AB Home Health's unqualified employees were not eligible for reimbursement by MaineCare.

138.    Defendant AB Home Health, when it submitted its bills/invoices described herein, had actual knowledge and/or acted with deliberate ignorance and/or acted with reckless disregard to the truth and/or falsity of the claims it was submitting to MaineCare.

139.    Defendant AB Home Health's invoices/bills sent tom MaineCare had the natural tendency to influence, or was capable of influencing, a decision by MaineCare as to the issuance of reimbursement for services rendered.

140.    MaineCare did in fact, as previously described herein, reimburse Defendant AB Home Health for the services associated with the invoices/bills it received.

141.    Defendant AB Home Health, by and through its officers, agents, supervisors, and/or employees, authorized the acts previously described herein.

142.    The State of Maine and federal government have been damaged as a result of Defendant AB Home Health's actions and/or omissions previously described herein, since it has paid money for services that did not comply with the mandated regulations and preconditions for payment.

143.    By virtue of the foregoing, Defendant AB Home Health is liable in an amount to be determined, plus punitive damages, interest and costs, treble damages, reasonable attorneys' fees to the fullest extent permissible, and such other and further relief as this Court deems just and appropriate.

## **RELIEF SOUGHT**

**WHEREFORE**, Relator Longacre demands judgment against Defendant AB Home Health as follows:

1.       With respect to Count I, that the Court enter judgment against Defendant AB Home Health and award an amount to be determined, together with interest, costs, and, if appropriate, attorneys' fees, and injunctive relief;

2.       With respect to Count II, that the Court enter judgment against Defendant AB Home Health and award an amount to be determined, together with interest, costs, and, if appropriate, attorneys' fees, and injunctive relief; and,

3.       That the Court award such other and further relief as it deems appropriate under the circumstances.


Dated: June 7, 2016                                  Respectfully submitted,
                                                     Rebekah W. Longacre
                                                     By her attorney,


                                                     /s/ Chad T. Hansen
                                                     Chad T. Hansen, Esq.
                                                     MAINE EMPLOYEE RIGHTS GROUP
                                                     92 Exchange Street, Second Floor
                                                     Portland, Maine 04101
                                                     207.874.0905 <Tel.>
                                                     207.874.0343 <Fax>