# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| REBEKAH LONGACRE, )<br>)<br>    *Plaintiff-Relator* )<br>)<br>v. )<br>)<br>AB HOME HEALTH CARE, LLC, )<br>)<br>    *Defendant* ) | No. 2:16-cv-00279-NT |

## *MEMORANDUM DECISION AND ORDER ON DISCOVERY DISPUTE*

Following a discovery hearing, the parties submitted simultaneous letter briefs addressing the proper temporal scope of plaintiff-relator's discovery requests in this *qui tam* action brought by the defendant's former supervisor and alleging that it fraudulently billed MaineCare (the Medicaid program in the state of Maine) for services rendered by unqualified individuals. While I reject defendant, AB Home Health Care, LLC's ("AB Home"), argument that, as a matter of law, discovery in this *qui tam* action should be limited to the period spanning Longacre's term of employment (January 21, 2014, through June 2, 2015), *see* Letter Brief of AB Home dated Aug. 17, 2018 ("AB Home Brief") (ECF No. 65) at 1; Plaintiff's First Amended Complaint ("FAC") (ECF No. 38) ¶ 7, I conclude that, even as voluntarily narrowed in her letter brief, two of Longacre's three categories of discovery remain overbroad under Rule 26's proportionality test. *See* Letter Brief of Rebekah Longacre dated Sept. 13, 2018 ("Longacre Brief") (ECF No. 74) at 1-3.[1]

---

[1] The three categories of requests are (i) documentation regarding AB Home's failure to comply with preconditions for MaineCare payment (enrollment and completion of training) (Plaintiff's Requests for Production ("RFP") Nos. 7-9, 12), (ii) documentation and information regarding AB Home's practices for ensuring compliance with preconditions for MaineCare payment (enrollment and completion of training) (Plaintiff's Interrogatory No. 4; RFP Nos. 16-23, 25), and (iii) communications between AB Home and the Maine Department of Health and Human Services ("DHHS") regarding compliance with preconditions for MaineCare payment (enrollment and completion of training) (RFP Nos. 26-29, 31). *See* Longacre Brief at 1-3. Longacre originally sought this discovery for the 10-year period from April

1

Treating the instant discovery dispute as a motion to compel production in response to Longacre's RFP Nos. 7-9, 12, 16-23, 25-29, and 31 and Interrogatory No. 4, and for the reasons that follow, I grant it in part, to the extent that I order AB Home to produce, within 21 days hereof, documents and information responsive to the first two categories of requests for the period from January 17, 2012, through the suspension of defendant's ability to bill MaineCare effective November 2017 and documents responsive to the third category for the period from March 6, 2011, through the suspension of defendant's ability to bill MaineCare effective November 2017, and otherwise deny it.

## I. Plaintiff's Allegations

AB Home is a home-healthcare provider based in Portland, Maine, and owned by Abdulfatah Ali. FAC ¶¶ 10-11. DHHS has licensed AB Home to provide services under MaineCare. *Id*. ¶¶ 17-18, 22. This license allows AB Home to seek reimbursement from MaineCare for services that it provides to eligible MaineCare members. *Id*. ¶ 24. The requirements for reimbursement under MaineCare are set out in the MaineCare Benefits Manual, a set of rules promulgated by DHHS. *Id*. ¶¶ 3, 27.

Healthcare providers such as AB Home may seek reimbursement for personal care services performed by personal support specialists. *Id*. ¶¶ 30-31. In order for a provider to be eligible for reimbursement, a personal support specialist must meet certain training and examination requirements. *Id*. ¶¶ 40-41. If a personal support specialist has not met the training and examination requirements, he or she "must enroll in a certified training program within sixty (60)

---

2008 through April 2018, but narrowed her request to the period from March 6, 2011, when AB Home was incorporated, through November 2017, when DHHS suspended AB Home's ability to bill for MaineCare services. *See id.* at 2. With regard to the first category of requests, Longacre originally sought the court's assistance with regard to RFP 12 but not 13 & 14, which she added in her brief; I decline this expansion since AB Home did not have an opportunity to address it subsequent to Longacre's brief.

2

days of hire and complete training and examination requirements within nine (9) months of employment[.]" *Id.* ¶ 33. If a personal support specialist does not pass the required examination within nine months of employment, his or her "services . . . must stop until such time as the training and examination requirements are met." *Id.* Providers are prohibited from seeking reimbursement for personal support specialist services rendered by "persons who do not meet the qualification requirements of the Regulation." *Id.* ¶ 34.

Longacre worked for AB Home from January 21, 2014, until June 2, 2015, first as a nurse supervisor and later as director of nursing. *Id.* ¶¶ 7, 48, 56. Longacre alleges that, when she was hired, Ali told her that AB Home's personal support specialists would not receive a paycheck if the cost of their services was not reimbursed by MaineCare. *Id.* ¶ 49. Shortly thereafter, Longacre observed that, although some of AB Home's personal support specialists had worked for AB Home for more than nine months without completing their training requirements, those employees were receiving their paychecks. *Id.* ¶¶ 50-53. Longacre, therefore, believed that AB Home was submitting requests for reimbursement for services rendered by the unqualified employees. *Id.* ¶ 62. Longacre has identified eight AB Home employees who, between January 2014 and June 2015, (i) "were unqualified for purposes of the MaineCare regulations[,]" (ii) were scheduled to provide personal care services and did so, and (iii) received paychecks. *Id.* ¶¶ 105-07.

## II. Discussion

### A. *Qui Tam* Discovery Limitations

"Congress has amended the FCA [False Claims Act] several times to walk a fine line between encouraging whistle-blowing and discouraging opportunistic behavior." *United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.* ("*Duxbury I*"), 579 F.3d 13, 16 (1st Cir. 2009) (citation and internal quotation marks omitted). To that end, AB Home cites authority for the general

3

proposition that "courts have rejected a relator's attempt to open wide-ranging discovery that exceeds the complaint's allegations." AB Home Brief at 1 (citing *United States ex rel. Spay v. CVS Caremark Corp.*, Civil Action No. 09-4672, 2013 WL 4525226, at *3-4 (E.D. Pa. Aug. 27, 2013) (declining "to allow . . . a fishing expedition into potential fraudulent claims beyond 2007 absent some particularized pleading that any such claims occurred") (footnote omitted); *United States ex rel. Powell v. Am. Intercontinental Univ., Inc.*, CIVIL CASE NO. 1:08-CV-2277-RWS-LTW, 2013 WL 12114445, at *5 (N.D. Ga. Feb. 22, 2013) (declining to permit discovery for period prior to January 1, 2005, when plaintiffs did "not plead with particularity fraud with respect to compliance with [applicable] standards prior to 2005")).

AB Home argues that the instant case is similar to *Spay* in that Longacre's complaint lacks particularized allegations that fall outside the dates of her employ. *See id.* at *2*. It acknowledges that Longacre takes the position that discovery beyond the period of her employment is critical to prove that AB Home either knew that the claims it was submitting were fraudulent or recklessly disregarded whether they were. *See id*. at 2. However, it observes that, in *United States ex rel. Jacobs v. CDS, P.A.*, Case No. 4:14-cv-00301-BLW, 2016 WL 4146077 (D. Idaho Aug. 3, 2016), the court declined to broaden the scope of discovery beyond the period of the relator's employment despite the relator's argument that broader discovery was justified "to help demonstrate 'knowledge and intent.'" *Id*. (quoting *Jacobs*, 2016 WL 4146077, at *3).

AB Home further asserts that "[t]he First Circuit has expressly endorsed limiting discovery to only those claims that satisfy [Federal] Rule [of Civil Procedure] 9(b)'s particularity requirement." *Id*. at 3 (citing *United States ex rel. Duxbury v. Ortho Biotech Prods., L.P.* ("*Duxbury II*"), 719 F.3d 31, 39 (1st Cir. 2013)).

4

AB Home's main concern appears to be that Longacre seeks "to investigate every nook and cranny of AB Home's provision of PSS [personal support specialist] services for a decade, in a search to support potential false claims." *Id.* at 2. It asserts that "discovery in a False Claims Act case is not a 'roving commission to investigate all financial dealings of the defendants[,]'" *id.* (quoting *United States ex rel. Oughatiyan v. IPC The Hospitalist Co.,* No. 09 C 5418, 2015 WL 4249195, at *3 (N.D. Ill. July 14, 2015) (internal quotation marks omitted), noting that, in *United States ex rel. Bane v. Breathe Easy Pulmonary Servs. Inc.*, No. 8:06-CV-40-T-24MAP, 2008 WL 4057549 (M.D. Fla. Aug. 27, 2008), the court limited discovery to the time periods and providers alleged in the complaint, *see id.* (citing *Bane*, 2008 WL 4057549, at *1).[2] It warns that, if "discovery that vastly exceeds [the] allegations in the complaint" is permitted, there will be little to "discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information [during] discovery.'" *Id.* at 5 (quoting *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 226 (1st Cir. 2004)).

I am unpersuaded that there is, or ought to be, a general rule in *qui tam* actions against the allowance of discovery for periods either outside the time frame of a relator's employment or beyond time frames alleged with particularity pursuant to Rule 9(b) in a relator's complaint.

First, I perceive no reason why the concerns raised by AB Home cannot be addressed through the application of the discovery principles set forth in Rule 26(b)(1), which permits discovery of nonprivileged matters "relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

---

[2] *But see United States ex rel. McCartor v. Rolls-Royce Corp.*, No. 1:08-cv-00133-WTL-DML, 2013 WL 5348536, at *2, 5-6 (S.D. Ind. Sept. 24, 2013) (declining to follow *Bane*'s reasoning that "discovery in *qui tam* actions must be limited and tailored to the specificity of the complaint"; applying "the discovery rules and principles provided by the Federal Rules of Civil Procedure" in determining "[w]hat discovery [wa]s reasonably necessary for the relators' pursuit of their claims in this case") (citation and internal quotation marks omitted).

5

Second, as Longacre argues, *see* Longacre Brief at 5, *Duxbury II* does not support a wholesale limitation on discovery beyond the particularized allegations of a relator's complaint. The First Circuit's "endorsement" of this limitation was hardly full-throated. Instead, it merely ruled that the district court's tailoring of the scope of discovery to the particularized allegations was "reasonable[,]" that the "district court was not required to expand the scope of discovery based upon the amended complaint's bald assertions that the purported kickback scheme continued after Duxbury's termination or that it was 'nationwide' in scope[,]" and that the "result was entirely consistent with the district court's considerable latitude in assessing the proper scope of discovery and did not amount to an abuse of discretion." *Duxbury II*, 719 F.3d at 38-39 (citations omitted).

Third, as Longacre notes, *see* Longacre Brief at 4, caselaw from other jurisdictions is not monolithic, with courts declining to limit discovery in *qui tam* actions to the particularized allegations of the complaint pursuant to Rule 9(b), including the period of a relator's employment, *see, e.g.*, *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.,* 794 F.3d 457, 466-67 (5th Cir. 2015) ("Applying Rule 9(b) [after a motion to dismiss is denied] presents a square peg/round hole problem. . . . Rule 9(b) is not meant to supplant discovery.") (citation and internal quotation marks omitted); *United States ex rel. Walker v. R&F Props. of Lake Cty., Inc.*, 433 F.3d 1349, 1358-59 (11th Cir. 2005) (holding that district court committed reversible error when it "misconstrued the False Claims Act" in "limit[ing] discovery to the term of Walker's employment"); *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp.3d 1340, 1354 & n.15 (N.D. Ga. 2015) (denying defendant's motion for a protective order to the extent defendant sought geographic or temporal limits on discovery; noting that the "temporal cutoff decision is . . . one that must be made on a case-by-case basis"); *United States ex rel. Fiederer v. Healing Hearts Home Care, Inc.,* No. 2:13-cv-1848-APG-VCF, 2014 WL 4666531, at *2, 6 (D. Nev. Sept. 18,

2014) (allowing discovery over a six-year period when relator worked for defendant for only 28 days).

Fourth, and finally, this case is materially distinguishable from *Jacobs* on the basis of the quality of the showing made in support of Longacre's bid for temporal expansion of the bounds of discovery to help demonstrate knowledge and intent. The *Jacobs* court noted that the plaintiff spoke "in broad generalities," simply positing that physician recruitment agreements predating the time period in question would illustrate changes in the law and the defendants' knowledge of them. *Jacobs*, 2016 WL 4146077, at *3. The court ruled that "these arguments are not specific enough to be persuasive[,]" observing that, "[a]mong other things, plaintiff should have further explained how and when the law changed, why it changed, and how the relevant agreements might be expected to change." *Id*.

In this case, by contrast, Longacre asserts that AB Home disputes that it "knowingly" billed MaineCare for untrained employees, taking the position that, during Longacre's employment, she was responsible for ensuring that AB Home's personal support specialists were properly trained and supervised as required by MaineCare. Longacre Brief at 1. Against that backdrop, she supplies evidence that AB Home has indicated that five of the eight personal support specialists employed during her tenure were hired in 2012-13, prior to her hire, and that AB Home has been able to locate and provide certification of completed training for only two of those eight. *See id*. & Exh. 1 thereto.[3] She adds that information supplied by AB Home indicates that at least one personal support specialist who remained employed by AB Home after her departure continued to provide those services without any evidence of the required training/certification, at least through the date that she filed the instant complaint in October 2016. *See id*. at 1-2.

---

[3] The earliest date of hire for the set of employees Longacre identifies as unqualified is January 17, 2012. *See* Attach. A to Exh. 1 to Longacre Brief at Page ID # 408.

This constitutes a strong showing of the need to expand discovery to periods predating and postdating Longacre's employment with AB Home. Taking at face value Longacre's assertion that AB Home has claimed that she was responsible for ensuring its compliance with MaineCare's training requirements during the term of her employment, *see id.* at 1, a limitation of discovery to the dates of her employment would hamper her ability to demonstrate that AB Home's asserted compliance problems predated and/or postdated her own employment, bearing on its knowledge of, or reckless indifference to, any noncompliance during her period of employment.

While AB Home correctly notes the importance of striking the right balance "between encouraging whistle-blowing and discouraging opportunistic behavior[,]" *Duxbury I*, 579 F.3d at 16 (citation and internal quotation marks omitted), that principle does not undercut the obvious implications of Longacre's allegations.

Finally, Longacre argues that communications between AB Home and DHHS regarding compliance with preconditions for MaineCare payment (enrollment and completion of training) are relevant to AB Home's knowledge of the materiality of its alleged noncompliance. *See* Longacre Brief at 3. She asserts that AB Home has taken the position that DHHS's precondition of training for personal support specialists was optional and, hence, any failure to comply with that precondition was not material. *See id.* She represents that emails produced by AB Home included a contract between AB Home and DHHS for the provision of different services than those at issue stating that, as "consideration of the payments" made by DHHS, AB Home "shall supply all staff training as required by [DHHS][.]" *Id.* (internal quotation marks omitted). She presumes that agreements regarding the provision of personal support specialist services would contain similar language, shedding light on whether the precondition was material and, if so, whether AB Home

8

knew or should have known that it was. *See id*. This is a fair assumption, which Longacre should be permitted to test through the crucible of discovery.

Longacre further asserts, and it stands to reason, that relevant agreements may have been created not only during the brief term of her employment but also outside of it; for example, any time between March 6, 2011, when AB Home was incorporated, and January 2014, when she began work there. *See id.*

Taking at face value, once again, Longacre's contentions, Longacre's discovery requests do not fall into the realm of "opportunistic behavior." Rather, they are tailored to discover material information related to her allegations, which have survived a motion to dismiss. *See* ECF No. 24. Nonetheless, for the reasons discussed below, pursuant to Federal Rule of Civil Procedure 26(b)(1), I narrow the temporal scope of two of Longacre's three discovery categories beyond those voluntarily limited in her letter brief.

### B. Rule 26(b)(1) Analysis

For the foregoing reasons, the instant discovery dispute is properly resolved through the application of Rule 26(b)(1). Pursuant to that rule, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Rule 26 sets forth six factors relevant to the evaluation of proportionality: (i) "the importance of the issues at stake in the action," (ii) "the amount in controversy," (iii) "the parties' relative access to relevant information," (iv) "the parties' resources," (v) "the importance of the discovery in resolving the issues," and (vi) "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

### 1. Importance of the Issues at Stake in the Action

AB Home concedes that the "discovery sought goes to a core element of this action, namely, knowledge of falsity[,]" adding that, "[v]iewed singularly as an 'issue,' whether AB Home's submission of claims for PSS services was knowingly or recklessly false is important." AB Home Brief at 3. This factor weighs in favor of Longacre.

### 2. Amount in Controversy

AB Home concedes that the amount in controversy is "inherently substantial." *Id*. This factor weighs in favor of Longacre.

### 3. The Parties' Relative Access to Relevant Information

AB Home argues that there is "almost no information disparity concerning AB Home's provision of PSS services during the timeframe of the allegations of the complaint." *Id*. Yet, this argument assumes an order cabining discovery to the dates of Longacre's employ. *See id*. Because, as discussed above, Longacre makes a persuasive showing of her need for documentation and information predating and postdating her dates of employment, this factor tilts in her favor.

### 4. The Parties' Resources

AB Home represents that its resources are "scarce[,]" noting that its "Maine operations remain suspended for the better part of a year." *Id.* at 4. This weighs in AB Home's favor, despite the fact that its Massachusetts operations apparently remain active. *See id.* Nonetheless, Longacre's willingness to bear the cost of inspecting and copying personnel files, which she represents are now maintained in storage, *see* Longacre Brief at 2, mitigates some of the burden of the requested discovery, and I order that she do so.

### 5. Importance of the Discovery in Resolving the Issues

AB Home argues that the discovery sought is "far removed from the key facts of this case" and unlikely to be important to the resolution of the issues because Longacre's personal knowledge from the time span of her employment is far more central than "time-removed facts from years ago[.]" AB Home Brief at 4. This argument again assumes an order cabining discovery to the dates of Longacre's employ. *See id*. Because, for the reasons discussed above, I decline to do so, this factor tilts in Longacre's favor.

### 6. Whether the Burden or Expense Outweighs the Likely Benefit

AB Home argues that, because the requested discovery is of "marginal" relevance at best, its "burden and expense far outweighs any putative benefit." *Id*. It notes that it "has already produced almost 8,000 pages of electronic information[,]" that, "[e]xpanding discovery by even a year would result in making at least a thousand more electronic documents potentially relevant[,]" and that the expansion of the scope of discovery "would magnify paper discovery, which has not yet occurred." *Id.*

For the reasons discussed above, I conclude that Longacre has shown that the requested discovery, as voluntarily narrowed from a 10-year to a six-and-a-half-year period, *see* Longacre Brief at 2, is highly, rather than marginally, relevant to her case. Further, Longacre has offered to assume the cost of inspecting and copying personnel files, mitigating some of the burden and expense. *See* Longacre Brief at 2.

Nonetheless, with respect to the first two categories of discovery, I decline to order the production of documents or information from March 6, 2011 forward. Those two categories, seeking documentation or information regarding AB Home's failure to comply with preconditions for MaineCare (enrollment and completion of training) and practices for ensuring compliance with

those preconditions, *see id.* at 2, implicate Longacre's allegations that, while employed at AB Home, she personally observed eight employees provide personal support specialist services who were unqualified to do so pursuant to relevant MaineCare regulations. *See* FAC §§ 105-07. Yet, the earliest date of hire for those eight employees was January 17, 2012. *See* Attach. A to Exh. 1 to Longacre Brief at Page ID # 408. Thus, I order that documents and information related to those two categories of discovery requests be produced only from that date through the suspension of defendant's ability to bill MaineCare effective November 2017.[4]

By contrast, in her third category of requests, the plaintiff appropriately seeks documents for the period from March 6, 2011, the date of AB Home's incorporation, through the suspension of defendant's ability to bill MaineCare effective November 2017. For the reasons discussed above, communications between AB Home and DHHS throughout that period regarding compliance with preconditions for MaineCare payment (enrollment and completion of training) reasonably could be expected to shed light on whether, during the period of Longacre's employment, the training precondition was material and, if so, AB Home knew or should have known that it was.

### III. Conclusion

For the foregoing reasons, Longacre's request to compel the production of discovery is **GRANTED** in part, and otherwise **DENIED**, to the extent that I **ORDER** AB Home to produce to Longacre, no later than December 6, 2018, the following documents or information:

---

[4] Longacre's representation that she has information indicating that at least one personal support specialist who remained employed by AB Home after her departure continued to provide those services without any evidence of the required training/certification, at least through the date that she filed the instant complaint in October 2016, *see* Longacre Brief at 1-2, suffices to warrant discovery of the first two categories of documents and information through November 2017, the date that DHHS suspended AB Home's ability to bill MaineCare.

1. Documentation regarding AB Home's failure to comply with preconditions for MaineCare payment (enrollment and completion of training) (Plaintiff's Requests for Production ("RFP") Nos. 7-9, 12-14) for the period from January 17, 2012, through the suspension of defendant's ability to bill MaineCare effective November 2017;

2. Documentation and information regarding AB Home's practices for ensuring compliance with preconditions for MaineCare payment (enrollment and completion of training) (Plaintiff's Interrogatory No. 4; RFP Nos. 16-23, 25) for the period from January 17, 2012, through the suspension of defendant's ability to bill MaineCare effective November 2017; and

3. Communications between AB Home and DHHS regarding compliance with preconditions for MaineCare payment (enrollment and completion of training) (RPD Nos. 26-29, 31) for the period from March 6, 2011, through the suspension of defendant's ability to bill MaineCare effective November 2017.

I further **ORDER** that, without objection, Longacre assume the costs of inspecting and copying relevant portions of AB Home's personnel files. *See* Longacre Brief at 2.

Finally, upon issuance of this order, the clerk of court is directed to schedule a telephonic scheduling conference with the parties, at which the remaining pretrial deadlines shall be reset.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 15th day of November 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge